UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

STEVEN NELSON MURRAY,

    Petitioner,

v.

JERRY HOWELL, *et al.*,

    Respondents.

Case No. 2:12-cv-02212-RFB-VCF

**ORDER**

## I.  <u>Introduction</u>

This action is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by Steven Nelson Murray, a Nevada prisoner. Murray is represented by appointed counsel. He is serving consecutive sentences of life in prison with the possibility of parole after ten years on a conviction of vehicular homicide, and twenty years in prison with the possibility of parole after eight years on a conviction of DUI causing substantial bodily harm. Murray's amended habeas petition is before the Court for adjudication of his claims on their merits.

The Court will grant Murray's petition in part and deny it in part. The Court will grant Murray relief on Grounds 1 and 3 of his amended habeas petition, determining that Murray's trial counsel entered him into a stipulation that amounted to a waiver of his right to a jury trial on the vehicular homicide charge without advising him of the effects of that stipulation, that the resulting waiver of Murray's jury trial right was unknowing, and that Murray's appellate counsel performed ineffectively in not asserting that issue on Murray's direct appeal. The Court will deny Murray relief on all of his other claims. The Court will order that Murray's vehicular homicide be vacated by the state court unless the state

elects to retry him on this charge. The Court will stay its order requiring vacatur or retrial pending any appeal in this case.

Additionally, the Court will grant Murray release pursuant to Rule of Appellate Procedure 23(c) based upon the record in this case.

## II.   **Background**

In his amended habeas petition, Murray describes the facts underlying his case as follows:

> Just after dawn on July 7, 2008, in Las Vegas, Mr. Murray was driving to work in his red Dodge pickup truck. He left his house and drove south on Nellis Boulevard, made a right on Flamingo Road, then made another right on Boulder Highway. A couple hundred feet from the turn, Mr. Murray's car drove off the road, onto the sidewalk, hit a bus stop, and rolled onto its right side. The crash killed one of the women waiting at the bus stop (Patricia Hoff) and severely injured another woman (Porsche Hughes), who lost both of her legs. Mr. Murray had been driving at about the speed limit.

> After the crash, Mr. Murray was in shock—he climbed out of the driver's window (which was facing the sky), walked over to the curb, and sat down. The police arrived at the scene at about 5:39 a.m., within a few minutes of the crash. They suspected Mr. Murray might've been under the influence. They spoke to Mr. Murray, who admitted he had prescriptions for Valium and Percocet (and possibly MS Contin) and had taken his prescribed doses the night before. The police began to perform three field sobriety tests at about 6:40 a.m.: a horizontal gaze nystagmus test ("HGN"), which looks for an involuntary twitch in the eye when it gazes to the side; a walk-and-turn test; and a one-legged stand test. Mr. Murray supposedly failed four out of six indicators on the HGN test, three out of nine indicators on the walk-and-turn test, and two out of five indicators on the one-legged stand test.

> The police decided to take Mr. Murray to the local jail so that an officer [([a "drug recognition expert") could conduct a more detailed examination. Although they placed Mr. Murray in handcuffs and put him in a squad car, the police didn't think they'd formally arrested him yet. On the way to the jail, Mr. Murray started complaining of back pain, so the police took him to University Medical Center. At the hospital, the officer took

> Mr. Murray's blood pressure, which was low, and measured his pupils, which were constricted; the officer thought those signs were consistent with impairment. Also at the hospital, a nurse drew Mr. Murray's blood. The police tested his blood, which was positive for the active ingredients in Valium and Percocet. The amounts of the drugs in his system were consistent with his prescription dosages. The police ultimately arrested Mr. Murray at the hospital at 12:45 p.m.

\* \* \*

The State presented the case to a grand jury. Police officers testified, along with lay witnesses who saw the crash and the aftermath. The grand jury returned a three-count indictment on July 23, 2008, charging Mr. Murray with DUI causing death (regarding Ms. Hoff), DUI causing substantial bodily harm (regarding Ms. Hughes), and vehicular homicide (regarding Ms. Hoff). The DUI causing death charge (Count I) and the vehicular homicide charge (Count III) were alternative counts: the crime of vehicular homicide is similar to DUI causing death, but it applies to defendants who've received at least three prior DUI convictions.

The state court arraigned Mr. Murray on July 31, 2008. He pled not guilty and waived his state-law right to a speedy trial.

Amended Petition for a Writ of Habeas Corpus (ECF No. 60), pp. 2–4 (citations to record omitted). Respondents include the following in their statement of the background facts in their answer:

Prior to the crash, Murray was driving in and out of the lane "as if he was drunk" and struck the curb a few times. Police officers observed Murray to have constricted pupils, to be unsteady, and to have slurred speech. Murray admitted to ingesting Valium, OxyContin and Percocet. Murray failed the field sobriety tests administered by Officer Kevin Conway with the Las Vegas Metropolitan Police Department. Officer Conway concluded that Murray was under the influence of a controlled substance. Officer Michael Lemley with the Las Vegas Metropolitan Police Department, a drug recognition expert, concluded that Murray was under the influence of central nervous system depressants and narcotic analgesics. Murray's blood also contained quantities of Valium and OxyContin.

Answer (ECF No. 6), p. 2 (citations to record omitted).

Before trial, the defense moved to suppress all the evidence obtained as a result of the allegedly prolonged detention, including the results of the blood draw. See Motion to Suppress, Exh. 6 (ECF No. 10-10). At a hearing on the motion, defense counsel initially requested an evidentiary hearing; however, after the court determined there was probable cause to arrest Murray based on the fact of the crash alone, counsel conceded there would be no point to an evidentiary hearing. See Transcript of Proceedings, December 9, 2008, Exh. 9 (ECF No. 11-1).

The defense also moved to sever the vehicular homicide charge, as proving that charge would have involved presentation of evidence of Murray's prior DUIs. See Defendant's Motion to Sever Count 3, Exh. 11 (ECF No. 11-3). Instead of severing the

charge, however, the trial court ultimately accepted the parties' stipulation that Murray would not be tried before a jury on the vehicular homicide charge; rather, if he were convicted of DUI causing death, his prior DUI convictions would be treated as a sentencing enhancement to be decided by the trial court, and if found legally cognizable by the court, Murray would be adjudicated guilty of vehicular homicide instead of DUI causing death. See Transcript of Proceedings, January 13, 2009, Exh. 22 (ECF No. 13-3); Stipulation as to Procedure, Exh. 25 (ECF No. 13-6).

Murray's trial commenced on March 23, 2009. Pursuant to the stipulation, the jury was asked to consider only the two DUI counts, and the jury found Murray guilty of both. See Verdict, Exh. 35 (ECF No. 16-1). Murray's sentencing hearing was held on May 21, 2009. See Transcript of Sentencing, May 21, 2009, Exh. 38 (ECF No. 16-4). On June 15, 2009, the judgment of conviction was filed (see Judgment of Conviction, Exh. 39 (ECF No. 16-5), with Murray convicted of vehicular homicide and DUI causing substantial bodily harm; he was sentenced to consecutive sentences of life in prison with the possibility of parole after ten years, and twenty years in prison with the possibility of parole after eight years. See id.

Murray appealed, and the Nevada Supreme Court affirmed on February 3, 2011. See Order of Affirmance, Exh. 47 (ECF No. 17-4).

Murray then filed a petition for writ of habeas corpus in the state district court on April 4, 2011. See Petition for Writ of Habeas Corpus, Exh. 49 (ECF Nos. 17-6, 17-7). The court denied the petition on September 2, 2011. See Findings of Fact, Conclusions of Law and Order, Exh. 58 (ECF No. 18-7). Murray appealed, and the Nevada Supreme Court affirmed on March 7, 2012. See Order of Affirmance, Exh. 62 (ECF No. 19-2); see also Order Denying Rehearing, Exh. 63 (ECF No. 19-3); Order filed May 31, 2012, Pet. Exh. 7 (ECF No. 61-7).

This Court received Murray's federal petition for writ of habeas corpus, initiating this action, on December 28, 2012 (ECF No. 6). On March 31, 2015, the action was

stayed, upon Murray's motion, pending exhaustion of claims in state court. See Motion for Stay and Abeyance (ECF No. 32); Order entered March 31, 2015 (ECF No. 38).

During the stay of this action, on April 14, 2015, Murray filed a second petition for writ of habeas corpus in state court. See Supplemental Writ of Habeas Corpus, Pet. Exh. 8 (ECF No. 61-8). The state district court denied that petition on procedural grounds. See Findings of Fact, Conclusions of Law and Order, Pet. Exh. 11 (ECF No. 61-11). Murray appealed, and the Nevada Supreme Court affirmed on December 16, 2015. See Order of Affirmance, Pet. Exh. 13 (ECF No. 61-13).

On September 27, 2016, the stay of this action was lifted, and counsel was appointed for Murray. See Minute Order dated September 27, 2016 (ECF No. 47); Notice of Appearance of Counsel (ECF No. 48). With leave of court, on November 5, 2018, Murray filed an amended habeas petition (ECF No. 60), now his operative petition. In his amended petition, Murray asserts the following grounds for relief:

Ground 1: Murray's federal constitutional rights were violated because his "[t]rial counsel entered into a stipulation that allowed the judge to convict [him] of a substantive offense."

Ground 2A: Murray's federal constitutional rights were violated because his trial counsel were ineffective for entering "into a stipulation that allowed the judge to convict [him] of a substantive offense."

Ground 2B: Murray's federal constitutional rights were violated because his trial counsel were ineffective because they "failed to argue for suppression of the blood draw results on the grounds Mr. Murray didn't consent to the draw."

Ground 2C: Murray's federal constitutional rights were violated because his trial counsel were ineffective for failing to challenge an erroneous jury instruction."

Ground 2D: Murray's federal constitutional rights were violated because his trial counsel was ineffective for engaging in repeated unprofessional behavior.

Ground 2E: Murray's federal constitutional rights were violated because his trial counsel were ineffective for failing to object to the verdict form.

Ground 3: Murray's federal constitutional rights were violated because he received ineffective assistance of counsel on his direct appeal on account of his appellate counsel's failure to assert the claim in Ground 1.

Ground 4: Murray's federal constitutional rights were violated because the "police seized Mr. Murray's blood after an illegally long detention."

Ground 5: Murray's federal constitutional rights were violated because the "verdict form didn't correctly state the relevant offense."

Ground 6: Murray's federal constitutional rights were violated because the "State elicited evidence of Mr. Murray's pre-arrest silence."

Ground 7: Murray's federal constitutional rights were violated because the "jury was tainted with misconduct."

Ground 8: Murray's federal constitutional rights were violated because "[j]ury instruction 11 was fundamentally unfair."

Amended Petition for a Writ of Habeas Corpus (ECF No. 60), pp. 10–27.

The Respondents filed a motion to dismiss the amended petition (ECF No. 64). The Court granted that motion in part and denied it in part. See Order entered September 6, 2019 (ECF No. 72). The Court dismissed Grounds 3 and 4, and denied the motion, without prejudice, in all other respects. See id.

The Respondents filed an answer (ECF No. 76) on December 20, 2019, and Murray filed a reply (ECF No. 84) on May 4, 2020.

Also, on May 4, 2020, Murray filed a motion for an evidentiary hearing (ECF No. 85). Respondents filed an opposition to that motion on July 7, 2020 (ECF No. 93). Murray filed a reply on July 14, 2020 (ECF No. 94).

On June 3, 2020, Murray filed a motion for leave to file a notice of supplemental authorities (ECF No. 88). On June 17, 2020, Respondents filed a notice of non-opposition to that motion (ECF No. 90). The Court granted the motion on June 18, 2020 (ECF No. 91), and Murray's notice of supplemental authorities was filed (ECF No. 92). The Court takes the notice of supplemental authorities into consideration.

On November 17, 2020, Murray filed a motion for release pending this Court's decision in this action (ECF No. 95). The parties have fully briefed that motion (ECF Nos. 100, 101). The Court held a hearing regarding the motion on November 24, 2020 (ECF No. 103 (minutes)). At that hearing the Court granted Murray's motion for an evidentiary hearing (ECF No. 85) in part and denied it in part, and ordered that an evidentiary hearing would be held regarding Grounds 1, 2A, and 3, and regarding the motion for release.

At the November 17, 2020, hearing, the Court also ordered that it would reconsider the dismissal of Ground 3. The Court set a schedule for Respondents to supplement their answer with respect to Ground 3, and for Murray to reply. Respondents filed their supplemental answer, regarding Ground 3, on December 8, 2020 (ECF No. 105), and Murray filed a reply on December 15, 2020 (ECF No. 106).

The Court held an evidentiary hearing, regarding the merits of Grounds 1, 2A and 3, and regarding the motion for release, on December 18, 2020. The Court then heard argument of the parties on December 21, 2020.

## III.   Discussion

### A.   Procedural Default

In <u>Coleman v. Thompson</u>, the Supreme Court held that a state prisoner who fails to comply with the state's procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731–32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. <u>Murray</u>, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. See <u>McCleskey v. Zant</u>, 499 U.S. 467, 497 (1991). With respect to the question of prejudice, the petitioner bears "the

burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." White v. Lewis, 874 F.2d 599, 603 (9th Cir. 1989) (citing United States v. Frady, 456 U.S. 152, 170 (1982)).

In Martinez v. Ryan, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. In Martinez, the Supreme Court noted that it had previously held, in Coleman, that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural default. Martinez, 566 U.S. at 15. The Martinez Court, however, "qualif[ied] Coleman by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 9. A showing of cause and prejudice under Martinez consists of four elements: (1) the underlying claim must be "substantial;"
(2) the "cause" for the procedural default consists of there being "no counsel" or only "ineffective" counsel in the state postconviction proceeding; (3) the state postconviction proceeding was the "initial" collateral review proceeding where the claim could have been brought; and (4) state law requires that the claim be raised in an initial collateral review proceeding, or by "design and operation" such claims must be raised that way, rather than on direct appeal. See Trevino v. Thaler, 569 U.S. 416, 423, 429 (2013). The failure to meet any of these four prongs renders the Martinez exception unavailable to excuse a procedural default.

To show that a claim is "substantial" under Martinez, a petitioner must demonstrate that the underlying ineffectiveness claim has "some merit." See Martinez, 556 U.S. at 14. That is, the petitioner must be able to make at least some showing that trial counsel performed deficiently, and that the deficient performance harmed the defense. See Strickland v. Washington, 466 U.S. 668, 695–96 (1984).

In his first state habeas action, the Nevada Supreme Court addressed certain of Murray's claims on their merits. See Order of Affirmance, Exh. 62 (ECF No. 19-2). In his second state habeas action, however, the Nevada Supreme Court affirmed the state district court's denial of Murray's petition purely on state procedural grounds. See Order of Affirmance, Pet. Exh. 13 (ECF No. 61-13). Therefore, any claim asserted by Murray in his second state habeas action but not in his first state habeas action is subject to denial as procedurally defaulted, unless Murray can overcome the default.

B.   Reconsideration of Dismissal of Ground 3

In Ground 3, Murray claims that his federal constitutional rights were violated because he received ineffective assistance of counsel on his direct appeal on account of his appellate counsel's failure to assert the claim in Ground 1, which is his claim that his constitutional rights, including his constitutional jury trial right, were violated by the manner in which the vehicular homicide charge was adjudicated under the stipulation. Id. at 21.

Murray litigated his first state habeas action pro se. He asserted in his petition in that action that the stipulation regarding procedure in his case was illegal and violated his constitutional rights. See Petition for Writ of Habeas Corpus, Exh. 49, pp. 11–12 (ECF No. 17-6, pp. 12–13). Furthermore, Murray also asserted in that petition a claim that his appellate counsel was ineffective for not asserting, on his direct appeal, the claim that the stipulation violated his rights. See id. at 16–17 (ECF No. 17-6, pp. 17–18).

While Murray's pro se habeas petition in his first state habeas action was not artful, Murray did claim in that petition that his appellate counsel failed to raise "issues of arguable merit" and "significant and obvious issues," and he cross-referenced the claims that he asserted in the context of claims of ineffective assistance of trial counsel, where he stated the claim that the stipulation violated his rights. The Court determines that Murray's pro se state habeas petition shall be construed to assert—substantively and as claims of ineffective assistance of both trial and appellate counsel—that his rights,

including his right to a jury trial, were violated by the stipulation that his trial counsel agreed to without explaining it to him and without him understanding its consequence.

The state district court denied Murray's first state habeas petition without holding an evidentiary hearing. See Findings of Fact, Conclusions of Law and Order, Exh. 58 (ECF No. 18-7). That court ruled that the substantive claim regarding the stipulation (Ground 1 in this case) was procedurally barred because it was not raised on direct appeal. See id. at 4 (ECF No. 18-7, p. 5) ("Defendant's claims that the stipulation he entered into was illegal and that vehicular homicide cannot be treated as a sentence enhancement per NRS 484.37955 should have been raised on direct appeal. Inasmuch as Defendant claims that trial counsel entered into this stipulation and Defendant 'never agreed,' this claim is belied by the record."). The state district court also denied the claim of ineffective assistance of appellate counsel on its merits. See id. ("Defendant received effective assistance of appellate counsel.").

On the appeal in his first state habeas action, Petitioner asserted the substantive claim regarding the stipulation. See Petitioner's Brief, Exh. 60, pp. 2–5, 15, 18–20 (ECF No. 19, pp. 3–6, 16, 19–21). In affirming the district court's denial of Murray's petition, the Nevada Supreme Court made no mention of that claim. See Order of Affirmance, Exh. 62 (ECF No. 19-2). Murray also asserted the claim that his appellate counsel was ineffective for not asserting on his direct appeal the claim that the stipulation violated his rights. See Petitioner's Brief, Exh. 60, pp. 4–5, 14–15, 18–20 (ECF No. 19, pp. 5–6, 15–16, 19–21). The Nevada Supreme Court ruled on the merits of that claim, with no discussion. See Order of Affirmance, Exh. 62, p. 10 (ECF No. 19-2, p. 11) ("Appellant failed to demonstrate that further arguments on appeal would have resulted in a different outcome.").

After carefully reviewing the record of Murray's first state habeas action, cognizant that Murray's briefing in that action was pro se, and that he had never been properly advised regarding the effects of the stipulation under which he was tried,

the Court determines that Murray fairly raised the claim in Ground 3 in this case in his first state habeas action, and the state courts denied that claim on its merits. The Court,

therefore, reconsiders its previous ruling on this point, and determines that Ground 3 is not procedurally defaulted. The Court addresses the merits of Ground 3 below.

C.    Standard of Review of Merits of Claims

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a petition for a writ of habeas corpus on any claim that was adjudicated on the merits in state court unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d). A state-court ruling is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached

on "materially indistinguishable" facts. See Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam). A state-court ruling is "an unreasonable application" of clearly established federal law under section 2254(d) if it correctly identifies the governing legal rule but unreasonably applies the rule to the facts of the case. See Williams v. Taylor, 529 U.S. 362, 407–08 (2000). To obtain federal habeas relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court precedent was "objectively unreasonable." Id. at 409–10; see also Wiggins v. Smith, 539 U.S. 510, 520–21 (2003). Or, in other words, habeas relief is warranted, under the "unreasonable application" clause of section 2254(d), only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

D.    Standards Governing Claims of Ineffective Assistance of Counsel

In Strickland, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and

(2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. To establish prejudice under Strickland, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Where a state court previously adjudicated the claim of ineffective assistance of counsel under Strickland, establishing that the state court's decision was unreasonable is especially difficult. See Harrington, 562 U.S. at 104–05. In Harrington, the Supreme Court instructed:

> The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S. at 689]; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, Knowles [v. Mirzayance, 556 U.S. 111, 123 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under
>
> § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105; see also Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's Strickland determination under AEDPA, both AEDPA and Strickland's deferential standards apply; hence, the Supreme Court's description of the standard as 'doubly deferential.' [Yarborough v. Gentry, 540 U.S. 1, 6 (2003) (per curiam)].").

E.    Grounds 1, 2A and 3

In Ground 1 of his Amended Petition for Writ of Habeas Corpus in this case, Murray claims that his federal constitutional rights were violated because his "[t]rial counsel entered into a stipulation that allowed the judge to convict [him] of a substantive offense." Amended Petition for a Writ of Habeas Corpus (ECF No. 60), pp. 10–13. More specifically, Murray alleges:

> Mr. Murray didn't authorize this stipulation and didn't understand it. Had his attorneys explained it to him, he would've expressly rejected the stipulation and pushed for another solution that would've respected his right to a jury trial on each count. Because the trial attorneys entered into this stipulation without Mr. Murray having made a knowing and voluntary decision to accept it, the attorneys violated his Sixth Amendment autonomy right to control his defense.

Id. at 11. In Ground 2A, Murray claims that his federal constitutional rights were violated because his trial counsel were ineffective for entering the stipulation. Id. at 14–15. In Ground 3, Murray claims that his federal constitutional rights were violated because he received ineffective assistance of counsel on his direct appeal on account of his appellate counsel's failure to assert the claim in Ground 1. Id. at 21.

With respect to the death of Patricia Hoff, the State charged Murray with DUI causing death and, alternatively, vehicular homicide. Those two crimes are similar in Nevada, with one difference being that vehicular homicide required proof of at least three prior DUI offenses, whereas that showing was not required for a conviction of DUI causing death. See NRS 484C.430 (DUI causing death) (NRS 484C.430 subsequently replaced NRS 484.3795 in 2009, without any change bearing on the issues considered here); NRS 484C.130 (vehicular homicide) (NRS 484C.130 subsequently replaced 484.37955 in 2009, but, again, without any change bearing on the issues considered here). In addition, there are other differences between the elements of the crimes of DUI causing death and vehicular homicide; the Nevada Supreme Court explained this in a footnote in its order in Murray's first state habeas action:

> Notably, the State's burden of proof was slightly different for each of these offenses. Compare NRS 484C.430 (formerly NRS 484.3795) (providing that a defendant commits DUI causing death if a defendant under the influence of a controlled substance performs an act or neglects a duty imposed by law while driving if performing the act or neglecting the duty is

the proximate cause of the death of another person) with NRS 484C.130 (providing that a person commits vehicular homicide if the person drives a vehicle under the influence of a controlled substance, proximately causes the death of another person while driving, and has been convicted of at least three prior DUI convictions).

Order of Affirmance, Exh. 62 (ECF No. 19-2), p. 6 n.8.

Defense counsel was understandably concerned that if the State introduced evidence of Murray's prior DUI offenses, that information would unduly prejudice the jury with respect to all the charges against him, especially regarding the question whether he was impaired at the time of the accident; Murray's defense was that, despite his admitted use of prescription drugs, he was not impaired at the time of the accident. The defense, therefore, filed a motion to sever. See Defendant's Motion to Sever Count 3, Exh. 11 (ECF No. 11-3). In the motion to sever, the defense essentially requested a bifurcated jury trial, with the DUI charges tried first, followed by trial on the vehicular homicide charge if necessary. See id. at 3–4 (ECF No. 11-3, pp. 4–5) (citing Brown v. State, 114 Nev. 1118, 967 P.2d 1126 (1998)).

In response to the motion to sever, the State noted that this was apparently the first prosecution in Nevada under the then-new vehicular homicide statute. See Opposition to Motion to Sever, Exh. 16, p. 2 (ECF No. 11-8, p. 3). The State argued that the vehicular homicide charge should be treated as a sentencing enhancement on a DUI conviction, to be determined by the court rather than the jury. See id. at 2–4 (ECF No. 11-8, pp. 3–5). The State pointed out that, under Apprendi v. New Jersey, 530 U.S. 466 (2000), there is no constitutional requirement that a jury determine whether a defendant has prior convictions that enhance a sentence. See id. at 3 (ECF No. 11-8, p. 4) (citing Parsons v. State, 116, Nev. 928, 10 P.3d 836 (2000)); see also Apprendi, 530 U.S. at 490.

The trial court held a hearing on the motion to sever. See Transcript of Proceedings, January 13, 2009, Exh. 22 (ECF No. 13-3). At the hearing, Murray's trial counsel stated that the defense would agree to the State's proposal to treat the vehicular homicide charge as a sentencing enhancement to be determined by the court if the jury

returned a verdict of guilty on the DUI causing death charge. See id. at 3–4 (ECF No. 13-3, pp. 4–5). With that agreement, the court denied the motion to sever. See Order Denying Defendant's Motion to Sever, Exh. 23 (ECF No. 13-4).

The parties then filed a stipulation on the morning of March 23, 2009, the first day of trial, signed by Murray's counsel and the prosecutor—*but not by Murray*—agreeing to treat the vehicular homicide charge as a sentencing enhancement to be determined by the court, rather than as a separately charged crime that would have to be adjudicated by the jury. See Stipulation as to Procedure, Exh. 25 (ECF No. 13-6). The stipulation was as follows:

> The parties agree that the charge of vehicular homicide (NRS 484.37955) contained in Count 3 of the Indictment in this case is, and shall be treated as, a sentencing enhancement rather than as a separate charge.
>
> The State will not seek to introduce or refer to the Defendant's prior convictions in its case-in-chief, absent some occurrence that would make such introduction or reference proper. If and only if the Defendant is convicted of Felony DUI Causing Death (Count 1), the State would introduce the prior convictions at or before sentencing and request that the Court find that the Defendant has committed Vehicular Homicide, and sentence the Defendant accordingly.
>
> The Defendant agrees that it is the proper function of the Court to make a finding based upon evidence of prior convictions presented at or before sentencing to determine if the Defendant is guilty of Vehicular Homicide, and further agrees that the fact of such prior convictions need not be presented to the jury. The Defendant further agrees that the prior convictions are not such facts as need be found by the jury to sustain a conviction for Vehicular Homicide, as they relate only to the question of recidivism, and are a specific exception to the rule in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000).

Id.

The morning of the first day of trial, before jury selection began, counsel and the trial judge discussed the procedure to be employed under the stipulation. See Transcript of Proceedings, March 23, 2009, Exh. 27, pp. 2–7 (ECF No. 13-8, pp. 3–8). The trial judge expressed some confusion about the stipulation, and the prosecutor and Murray's counsel reminded the court of the nature of the stipulation and their reasons for entering it. See id. (ECF No. 13-8, pp. 3–8). Counsel agreed that, if the vehicular homicide charge were treated as a sentencing enhancement, rather than a separate crime, Apprendi would

not apply to that charge and it could be adjudicated by the court. See id. (ECF No. 13-8, pp. 3–8). *In that entire discussion, there was no explicit mention of Murray's constitutional right to a jury trial on the vehicular homicide charge.* See id. The trial judge then had the following exchange with Murray:

> THE COURT:  Mr. Murray, do you understand all this?
>
> THE DEFENDANT: Yes, ma'am. Yes, Your Honor.
>
> THE COURT:  Yes?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT:  You've discussed it with your lawyer?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT:  Do you have any questions?
>
> THE DEFENDANT: No, Your Honor.

Id. at 6–7 (ECF No. 13-8, pp. 7–8). Here again, there was *no mention*, in this "canvass," of Murray's constitutional right to a jury trial on the vehicular homicide charge. The trial court approved the stipulation (see Stipulation as to Procedure, Exh. 25 (ECF No. 13-6)), and the trial proceeded accordingly.

The claim in Ground 1 was never ruled upon, on its merits, in state court, because the state district court found it to be procedurally barred and the Nevada Supreme Court affirmed with no discussion of the claim. The Court determines, however, that Murray overcomes the apparent procedural default of Ground 1, on account of ineffective assistance of his appellate counsel in not raising the claim on his direct appeal (this claim of ineffective assistance of appellate counsel, Ground 3, is discussed below). Because the state courts did not rule on the claim in Ground 1 on its merits, this Court's consideration of the claim is de novo. See Cone v. Bell, 556 U.S. 449, 472 (2009) (where state procedural default bar does not lead to procedural default in federal habeas action, federal habeas court reviews claim de novo because state courts did not reach merits of claim, and AEDPA's standard of review does not apply). The AEDPA standard, codified at 28 U.S.C. § 2254(d), does not apply to this Court's consideration of Ground 1.

This Court determines that Murray had a right to a jury trial on the charge of vehicular homicide. There is no evidence, or legal authority, presented to this Court supporting a contention that Nevada's vehicular homicide statute (now NRS 484C.130) is merely a sentencing enhancement of the crime of DUI causing death (now NRS 484C.430). The two crimes are defined in two separate statutes, and there is nothing in the language of either statute to support that construction. Rather, the fact that there are differences between the elements of the two crimes, beyond the prior convictions necessary to prove vehicular homicide, strongly indicates that the Nevada legislature did not intend for vehicular homicide to be just a sentencing enhancement of DUI causing death, but meant it to be a distinct crime. Indeed, on November 8, 2010, which was after Murray's trial but before the Nevada Supreme Court's ruling on his direct appeal, the Nevada Supreme Court held in an unpublished disposition that vehicular homicide is a "separate crime," and not "simply a sentencing enhancement" of DUI causing death. Williams v. State, 126 Nev. 769, 367 P.3d 834 (table), 2010 WL 4537852 (2010) (unpublished). The Nevada Supreme Court in that case stated:

> The clear statutory language of NRS 484.37955 (now codified as 484C.130 and 484C.440) establishes the separate crime of vehicular homicide, an element of which is the prior commission of at least three DUI-related offenses. Thus, we reject Williams' contention on appeal that vehicular homicide is simply a sentencing enhancement of NRS 484.3795—DUI causing death or substantial bodily harm (now codified as 484C.430).

Id. at *1. The Court agrees with this conclusion by the Nevada Supreme Court in Williams. As noted, the clear language of the statute which sets its own elements and causation standard supports the finding that this statute is not merely a sentencing enhancement but a separate crime.

Accordingly, this Court determines that, before his counsel entered him into the stipulation regarding procedure at his trial, Murray had a right to a jury trial on the vehicular homicide charge. The stipulation waived that constitutional right.

The Supreme Court has held that the Sixth Amendment right to a jury trial is "fundamental to the American scheme of justice" and applies to criminal defendants in state courts under the Fourteenth Amendment. See Ramos v. Louisiana, 140 S.Ct. 1390, 1397 (2020); Duncan v. Louisiana, 391 U.S. 145, 148–150 (1968). A defendant's waiver of the right to a jury trial must be knowing, voluntary and intelligent. See Patton v. United States, 281 U.S. 276, 311–12 (1930), overruled on other grounds by Williams v. Florida, 399 U.S. 78, 90 (1970); United States v. Laney, 881 F.3d 1100, 1106 (9th Cir. 2018); Brown v. Burns, 996 F.2d 219, 221 (9th Cir. 1993). "A defendant … has 'the ultimate authority' to determine 'whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.'" Florida v. Nixon, 543 U.S. 175, 187 (2004), citing Jones v. Barnes, 463 U.S. 745, 751 (1983).

The question whether Murray's waiver of his right to a jury trial on the vehicular homicide charge was knowing was a subject of the evidentiary hearing held on December 18, 2020. In light of the record of the trial proceedings in Murray's case, and in light of evidence presented at the evidentiary hearing, this Court finds that Murray's waiver was unknowing. Murray was not advised, and did not understand, that the stipulation entered by his counsel waived his constitutional jury trial right as to the vehicular homicide charge. The Court further finds that Murray did not see the stipulation before the first day of his trial and that its effect in terms of his waiver of his right to a jury trial was never explained to him. The Court further finds that Murray relied upon his counsel in offering his responses to the trial court's canvass regarding the stipulation but that he clearly did not understand its significance.

Moreover, a review of the content of the stipulation itself confirms that there is no mention of Murrays's right to a jury trial on the vehicular homicide charge or that he was waiving this right by entering the stipulation. While the stipulation cited Apprendi, and recited that Apprendi would not apply if vehicular homicide were treated as a sentencing enhancement based on prior convictions, this is of no consequence since there was no

mention in the stipulation of Murray's constitutional right to a jury trial or his waiver of such right. See Stipulation as to Procedure, Exh. 25 (ECF No. 13-6).

Additionally, looking at the record of the first morning of the trial, when counsel and the trial judge discussed the stipulation in open court, there was again no mention of Murray's right to a jury trial on the vehicular homicide charge in that discussion. See Transcript of Proceedings, March 23, 2009, Exh. 27, pp. 2–7 (ECF No. 13-8, pp. 3–8).

And, finally, looking at the exchange between the trial judge and Murray regarding the stipulation, the judge did not mention Murray's right to a jury trial on the vehicular homicide charge or ask him if he was knowingly or voluntarily waiving his right to a jury trial on this charge. See Id. at 6–7 (ECF No. 13-8, pp. 7–8). In fact, in this Court's view, that exchange cannot be fairly characterized as a "canvass" of Murray regarding the waiver of his right to a jury trial on the vehicular homicide charge; surely, a canvass of a defendant regarding waiver of a constitutional right must at least include a mention of the constitutional right.

Furthermore, based on the testimony of Murray's two trial attorneys at the December 18, 2020, evidentiary hearing as well as the record in this case the Court finds that Murray's counsel did not have a clear understanding at the time of trial that Murray had a constitutional right to a jury trial on the vehicular homicide charge, and the stipulation would function as a waiver of that right. Both appeared to generally agree with the prosecution position, that the vehicular homicide statute was simply a sentence enhancement of DUI causing death. In the motion to sever filed by Murray's trial counsel, counsel mischaracterized DUI causing death and vehicular homicide as having identical elements, other than the prior DUI convictions that are an element of vehicular homicide:

> The charges as alleged in Count 1 [DUI causing death] and Count 3 [vehicular homicide] are charged in the alternative as indicated by the District Attorney to the Grand Jury. This is due to the fact that the charges have *identical elements*, other than the allegation in Count 3 that the defendant has been convicted of three or more DUI offenses. Therefore, the only additional element that the State must [prove] in Count 3 is that the Defendant does in fact have prior DUI convictions, whether they are misdemeanor or felonies.

Motion to Sever, Exh. 11, pp. 2–3 (ECF No. 11-3, pp. 3–4)(emphasis added). In that motion to sever, not only did counsel mischaracterize the elements of DUI causing death and vehicular homicide, but counsel made no mention of Murray's right to a jury trial on the vehicular homicide charge. The Court finds that trial defense counsel did not properly understand that vehicular homicide was a separate crime that had an independent right to a jury trial and thus could not have properly advised Murray of his separate right to a jury trial on this charge.

In their testimony at the evidentiary hearing, both of Murray's trial attorneys emphasized their reasons for entering the stipulation: to prevent proof of Murray's prior DUI convictions from being presented to the jury. However, with regard to the question whether Murray's waiver of his right to a jury trial was knowing or unknowing, the tactical reason why counsel entered the stipulation is immaterial. Regardless of how strongly his counsel felt, from a tactical standpoint, that Murray should agree to the stipulation, he had a right to know that it meant waiving his right to a jury trial on a charged crime that could result in a life sentence, and he had a right to make that decision for himself. *See United States v. Shorty*, 741 F.3d 961, 969 (9th Cir. 2013) ("[T]hat Shorty may have made a 'tactical choice' to waive a jury tells us nothing about whether he understood what he would be giving up by making such a choice. It was the district court's responsibility to fully inform Shorty of the nature and import of the right he was waiving, no matter his (or his counsel's) reason for waiving it. In failing to do so, the district court did not meet its 'serious and weighty responsibility' of ensuring that Shorty knew what that right meant and understood the consequences of waiving it." (citing Johnson v. Zerbst, 304 U.S. 458, 465 (1938))).

In short, the Court finds that Murray was not informed by either his counsel or the trial court, and he did not understand, that by entering him into the stipulation his attorneys were giving up his constitutional right to a jury trial on the vehicular homicide charge. Murray's waiver of his right to a jury trial on the vehicular homicide charge was therefore unknowing.

The denial of Murray's constitutional right to a jury trial, by his unknowing waiver of that right, is structural error. See United States v. Duarte-Higareda, 113 F.3d 1000, 1003 (9th Cir. 1997); Laney, 881 F.3d at 1108; Shorty, 741 F.3d at 969. While Murray's testimony at the evidentiary hearing indicated, and the Court finds that Murray would not have entered the stipulation if he knew that it meant waiving his jury trial right, the Court need not reach that question. Murray need not show prejudice to prevail on Ground 1. The Court will grant Murray habeas corpus relief on Ground 1.

Turning next to Ground 3, Murray's claim that his appellate counsel was ineffective for failing to raise the claim in Ground 1 on his direct appeal, the Court determines that claim has merit, and that relief is warranted on that claim as well.

Given the nature of the claim in Ground 1, and its merits (discussed above), Murray's appellate counsel performed unreasonably in not raising that issue on Murray's direct appeal. It was apparent from the record—on the face of the stipulation, in the record of the discussion between counsel and the trial court regarding the stipulation, and in record of the trial judge's exchange with Murray about the stipulation—that Murray was uninformed that the stipulation meant a waiver of his right to a jury trial. The error was structural, and there is a reasonable probability that, if the issue were raised on appeal, the Nevada Supreme Court would have reversed the judgment of conviction as to the vehicular homicide charge.

Furthermore, on November 8, 2010, before Murray's direct appeal was completed, the Nevada Supreme Court ruled on the appeal in the Williams case. See Williams, 2010 WL 4537852 (unpublished) (holding that vehicular homicide is a separate crime, and not simply a sentencing enhancement of DUI causing death). Murray's appellate counsel should have been but was evidently unaware of that ruling. The failure to discovery this ruling and identify this issue and the ruling in terms of Murray's appeal were objectively unreasonable.

The Court determines that Murray was prejudiced by his appellate counsel's failure to raise on his appeal the claim in Ground 1. There is a reasonable probability that, but

for appellate counsel's error, the result of the direct appeal would have been different, that is, the judgment of conviction would have been reversed, and Murray would have been granted a new trial on the vehicular homicide charge. See Strickland, 466 U.S. at 688, 694.

The Court determines, then, that the Strickland standard is met here. Murray's appellate counsel performed unreasonably in not raising the claim in Ground 1 on Murray's direct appeal and Murray was prejudiced.

The Nevada Supreme Court apparently denied this claim of ineffective assistance of appellate counsel on its merits in Murray's first state habeas action; however, in that action, neither the state district court nor the Nevada Supreme Court provided any analysis of the claim. "[W]hen a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." Johnson v. Williams, 568 U.S. 289, 292 (2013) (discussing Harrington). When, as is the case here, a court is faced with a claim that was decided, but not discussed, by the state court, the federal habeas court "must determine what arguments or theories ... could have supported" the state court's rejection of the federal claim, and then give deference to those arguments or theories under AEDPA. Harrington, 562 U.S. at 102. Here, the Court sees no reasonable argument supporting the denial of the claim of ineffective assistance of appellate counsel. Appellate counsel failed to raise a claim that, in view of the state-court record, was patently meritorious, that would have established structural error, and that carried a strong possibility of reversal of Murray's judgment of conviction. The denial of Murray's claim of ineffective assistance of his appellate counsel in this regard was objectively unreasonable. The Court determines that, as to Ground 3, Murray meets the standard of 28 U.S.C. § 2254(d). The Court will grant Murray habeas corpus relief on Ground 3.

Turning to Ground 2A, the claim of ineffective assistance of Murray's trial counsel, the Court determines that Murray does not meet the § 2254(d) standard with respect to that claim, and, therefore, habeas relief on it is unwarranted. The Nevada Supreme Court ruled as follows on the claim in Ground 2A:

> ... Appellant claimed that trial counsel entered into an illegal stipulation with the State. The State had charged appellant alternatively with driving under the influence causing death and vehicular homicide. The parties stipulated to treating the vehicular homicide count as a sentencing enhancement. The State agreed not to present proof of appellant's prior convictions during its case-in-chief absent an occurrence that would cause their introduction to be proper; rather, if appellant was
>
> found guilty of driving under the influence, the State would present proof of the prior convictions for sentencing and request a finding that appellant had committed vehicular homicide. Appellant failed to demonstrate that his trial counsel were deficient or that he was prejudiced. The stipulation prevented the jury from being presented with appellant's prior convictions for driving under the influence as such information would have been damaging to appellant at trial. Appellant was personally canvassed about the stipulation and appellant indicated that he understood the stipulation and had discussed it with his attorneys. Therefore, we conclude that the district court did not err in denying this claim.

Order of Affirmance, Exh. 62, pp. 6–7 (ECF No. 19-2, pp. 7–8) (footnotes omitted). The Court determines that Murray has not shown this ruling of the Nevada Supreme Court to be unreasonable with respect to the prejudice component of the Strickland standard. Murray makes no showing that it was objectively unreasonable for the Nevada Supreme Court to conclude that Murray showed no reasonable probability that, but for his counsel entering the stipulation, the result of the trial would have been different. See Weaver v. Massachusetts, 137 S.Ct. 1899, 1907–14 (2017) (petitioner must show prejudice where ineffective assistance of counsel caused structural error, but the structural error is not one that necessarily leads to fundamental unfairness, and there was no objection to the error at trial or on direct appeal). Therefore, affording the state supreme court the deference required by 28 U.S.C. § 2254(d), this Court denies Murray relief on Ground 2A.

F.   Ground 2B

In Ground 2B, Murray claims that his federal constitutional rights were violated because his trial counsel were ineffective because they "failed to argue for suppression

of the blood draw results on the grounds Mr. Murray didn't consent to the draw." Amended

Petition for a Writ of Habeas Corpus (ECF No. 60), p. 15. Murray's claim, as set forth in

his amended petition, is, in its entirety, as follows:

> The police drew Mr. Murray's blood at the hospital and used the results against him at trial. Trial counsel moved to suppress those results before trial on the grounds the police had illegally detained Mr. Murray for an unreasonable amount of time before the blood draw. See Ground Four, infra. But counsel didn't include a meritorious alternative argument: the police didn't have a warrant when they drew Mr. Murray's blood. The police's failure to get a warrant before the blood draw meant the draw was
>
> unconstitutional. Trial counsel performed deficiently by not raising this point. There could be no valid strategic reason for counsel not to push a winning alternative argument for suppression. The mistake caused the defense prejudice. Had the defense made this argument, the court would've agreed to suppress the results (at least, there's a reasonable probability the motion would've been successful). In turn, there's a reasonable probability that if the blood results had been suppressed, the outcome of the trial would've been different. Mr. Murray is therefore entitled to relief.

Id.

In the order entered September 6, 2019, the Court ruled that this claim is

technically exhausted in state court, but potentially subject to denial as procedurally

defaulted. See Order entered September 6, 2019 (ECF No. 72), pp. 8–10. Murray argues

he can overcome the procedural default, under Martinez, because he did not have

counsel in his first state habeas action.

At the time of the events underlying this case, and at the time of Murray's trial,

Nevada's implied consent statute (NRS 484.383, now NRS 484C.160) had not been held

unconstitutional, and it provided that "any person who drives or is in actual physical control

of a vehicle … shall be deemed to have given his consent to an evidentiary test of his

blood … to determine whether a controlled substance … is present," so long as a police

officer has "reasonable grounds to believe" the person was driving under the influence.

NRS 484.383(1) (2007).

It is undisputed that when Murray drove off the road and crashed into the bus stop,

he was driving his vehicle on a public highway. It is also undisputed that the phlebotomist

who drew Murray's blood did so at the direction of a police officer. See Transcript of Grand

Jury Proceeding, Exh. 2, p. 63 (ECF No. 10-5, p. 5). Given the evidence presented to the grand jury, it was plain that there were reasonable grounds to believe Murray was driving while under the influence of a controlled substance. Officer Kevin Conway testified that when he made contact with Murray at the scene, Murray acknowledged that he drove his vehicle onto the sidewalk. Id. at 70 (ECF No. 10-5,

p. 12). Officer Conway testified that Murray told him that he had taken narcotics, including Percocet, Valium and OxyContin, but was vague about when he had taken them. See id. at 70–71 (ECF No. 10-5, pp. 12–13). Officer Conway observed that Murray had constricted pupils and appeared unsteady. Id. at 71–72 (ECF No. 10-5, pp. 13–14). Officer Conway conducted a Horizontal Gaze Nystagmus field sobriety test, which indicated Murray "was possibly on some kind of narcotic." Id. at 73–75 (ECF No. 10-5, pp. 15–17). Officer Conway then administered a "walk and turn" field sobriety test, which Murray failed. Id. at 75–76 (ECF No. 10-5, pp. 17–18). Next Officer Conway administered a "one leg stand" field sobriety test, which Murray also failed. Id. at 76–77 (ECF No. 10-5, pp. 18–19). Officer Michael Lemley testified that he also made contact with Murray at the scene, and Murray told him that he had taken Valium and Percocet the night before. Id. at 87 (ECF No. 10-5, p. 29). Officer Lemley observed Murray to be "swaying back and forth" and he "had to catch him and stabilize him where he could stand up on his own." Id. at 87–88 (ECF No. 10-5, pp. 29–30). Officer Lemley testified that Murray "stumbled back and forth so [he] stayed real close to him." Id. at 88 (ECF No. 10-5, p. 30). Officer Lemley saw Murray bump his head getting into a patrol car. Id. Officer Lemley observed that Murray "had a very low, raspy voice and he slurred his words as he talked." Id. Murray was transported to a hospital, and at the hospital Officer Lemley requested the blood draw and read Murray the "Implied Consent Law." Id. at 90–91 (ECF No. 10-5, pp. 32–33).

In light of the evidence showing the police had reasonable grounds to believe Murray was driving while under the influence of a controlled substance, and in view of Nevada's implied consent law (then NRS 484.383), it was reasonable for Murray's trial

counsel to believe that any challenge to Murray's implied consent of the blood draw would not be successful.

Murray points out in his Reply that the Nevada Supreme Court ruled Nevada's implied consent law to be unconstitutional in <u>Byars v. State</u>, 130 Nev. 848, 336 P.3d 939 (2014). In <u>Byars</u>, in 2014, the Nevada Supreme Court ruled that Nevada's implied consent law was unconstitutional because it did not allow for a defendant to retract the implied consent, but rather allowed the police to use reasonable force to require the defendant to submit to the blood test if he refused. <u>See</u> <u>Byars</u>, 130 Nev. at 859, 336 P.3d at 946. Despite the fact that <u>Byars</u> was decided more than five years after Murray's trial, and after his conviction became final, Murray argues in his Reply that his trial counsel "should've been aware of this potential challenge based on the existing state of the law" at the time of trial. <u>See</u> Reply (ECF No. 84), p. 29. Murray points out that in <u>Byars</u> the Nevada Supreme Court cited the following cases, which were decided before his trial: <u>State v. Jones</u>, 111 Nev. 774, 776, 895 P.2d 643, 644 (1995) (noting that cocaine had a slower dissipation rate than alcohol in holding that a warrant was required before performing a blood test on a pedestrian suspected of being under the influence of a controlled substance); <u>Florida v. Jimeno</u>, 500 U.S. 248, 252 (1991) ("A suspect may of course delimit as he chooses the scope of the search to which he consents."); <u>United States v. McMullin</u>, 576 F.3d 810, 815 (8th Cir. 2009) (holding that the occupant of a house "must make an unequivocal act or statement to indicate the withdrawal of the consent"); <u>United States v. McWeeney</u>, 454 F.3d 1030 (9th Cir. 2006) (holding that law enforcement officers may not "coerce a citizen into believing that he or she had no authority to enforce" the right to withdraw consent). <u>See</u> <u>Byars</u>, 130 Nev. at 855–57, 336 P.2d at 944–45 (the citations in <u>Byars</u> included the parenthetical descriptions of the holdings set forth here). This Court determines that the caselaw cited in <u>Byars</u>, and pointed out by Murray in his Reply, did not so clearly portend the unconstitutionality of the Nevada implied consent statute that it was unreasonable in 2009 for an attorney to forgo a motion to suppress evidence obtained from a blood test on that ground. When addressing an ineffective assistance of

counsel claim, this Court must be careful "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Bullock v. Carver, 297 F.3d 1036, 1052 (10th Cir. 2002) (rejecting ineffective assistance claim based upon counsel's failure to predict future changes in the law and stating that "clairvoyance is not a required attribute of effective representation"). This Court determines that it was not unreasonable for Murray's counsel to believe the warrantless blood test was legal under Nevada's implied consent law, and to forgo a motion to suppress on the ground that the blood draw constituted an illegal warrantless search.

More importantly, Murray does not show that he was prejudiced by his trial counsel not moving to suppress evidence on the ground that Nevada's implied consent law was unconstitutional. In the Byars case, despite holding Nevada's implied consent law to be unconstitutional, the Nevada Supreme Court denied relief on the claim, ruling that the good-faith exception to the exclusionary rule applied. See Byars, 130 Nev. at 859–60, 336 P.3d at 946–47, citing United States v. Leon, 468 U.S. 897 (1984), and Illinois v. Krull, 480 U.S. 340 (1987). The court in Byars ruled that exclusion of the blood-test evidence would not act as a deterrent to unconstitutional police conduct because the record did not contradict the State's assertion that the police officer in that case reasonably relied in good faith on the constitutional validity of the implied consent statute. See id. There is no evidence of bad faith on the part of the police in this case either. Thus, even if Murray's trial counsel had challenged the blood draw on the ground that the implied consent statute was unconstitutional, and even if the state courts had then ruled, for the first time, that the statute was unconstitutional, the good-faith exception to the exclusionary rule would likely have applied, the same evidence would have been admitted, and there is no reasonable probability of a different outcome of Murray's trial.

The Court determines that the claim in Ground 2B is not substantial within the meaning of Martinez. See Martinez, 556 U.S. at 14. Ground 2B will be denied as procedurally defaulted.

G.      Grounds 2C and 8

In Ground 2C, Murray claims that his federal constitutional rights were violated because his trial counsel were ineffective for failing to challenge an erroneous jury instruction. Amended Petition for a Writ of Habeas Corpus (ECF No. 60), pp. 15–16. In Ground 8, Murray claims that his federal constitutional rights were violated because "[j]ury instruction 11 was fundamentally unfair." Id. at 27.

In the order entered September 6, 2019, the Court ruled that these claims are subject to denial as procedurally defaulted, unless Murray can demonstrate that an exception to the procedural default doctrine applies. See Order entered September 6, 2019 (ECF No. 72), p. 14. Murray argues he can overcome the procedural default of the claim in Ground 2C under Martinez because he did not have counsel in his first state habeas action, and, in turn, he argues that the ineffective assistance of his trial counsel is cause for the default of the claim in Ground 8.

Jury Instruction 11, the subject of these claims, was as follows:

> The fact that any person charged with ... driving or being in actual physical control while under the influence of a controlled substance is or has been entitled to use that drug under the laws of this State is not a defense against a charge of driving or being in actual physical control while under the influence of a controlled substance.

Jury Instruction 11, Exh. 36 (ECF No. 16-2, p. 13). As the Court understands Murray's argument, it is that this instruction was misleading because it did not inform the jury that Murray's lawful use of prescription drugs for many years resulted in him developing a tolerance to the drugs and was therefore evidence that he was not impaired at the time of the accident. See Amended Petition for a Writ of Habeas Corpus (ECF No. 60), pp. 15–16.

With respect to Murray's federal constitutional rights, the question is whether the jury instruction "so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973) (internal quotation marks omitted)); see also Henderson v. Kibbe, 431 U.S. 145, 154 (1977) ("The question ... is whether the ailing instruction by itself so

infected the entire trial that the resulting conviction violates due process ... not merely whether the instruction is undesirable, erroneous, or even universally condemned." (quoting Cupp, 414 U.S. at 147) (internal quotation marks omitted)).

Jury Instruction 11 was a nearly verbatim statement of Nevada statutory law. At the time of Murray's offenses, NRS 484.379 stated:

> The fact that any person charged with a violation of this subsection is or has been entitled to use that drug under the laws of this State is not a defense against any charge of violating this subsection.

NRS 484.379(2)(c) (as in effect July 7, 2008).

The language of Jury Instruction 11, like the language of the statute from which it was derived, precluded only a defense based on "the fact" that the defendant was entitled to use—was prescribed—the drugs in question. Murray's defense was not based on "the fact" that he had a prescription; his defense was that his long-time use of the drugs gave him a tolerance to the drugs, and, therefore, he was not impaired when the accident occurred.

Furthermore, reading the contested instruction in the context of all the jury instructions, it is notable that the trial court also instructed the jury as follows:

> Any person who, while under the influence of a controlled substance, does any act or neglects any duty imposed by law while driving or exercising physical control of a vehicle on or off the highway in this state, if the act or neglect of duty proximately causes the death of, or substantial bodily harm to, another person, is guilty of an offense.

> The elements of Driving or Being in Actual Physical Control of a Motor Vehicle on a Highway or Premises to Which the Public Has Access While Under the Influence of a Controlled Substance are:

> (1) A person is driving or in actual physical control of a vehicle on or off the highway;

> (2) The person while driving is under the influence of one or more controlled substances to a degree which renders him incapable of safely driving or exercising physical control of the vehicle;

> (3) Does any act or neglects any duty imposed by law while driving or in actual physical control of a vehicle; and,

> (4) The act or neglect of duty proximately causes death or substantial bodily harm to another person.

Jury Instruction 7, Exh. 36 (ECF No. 16-2, p. 9) (emphasis added). Read together, the jury instructions as a whole provided an opportunity to Murray to defend by arguing that, at the time of the accident, he was not impaired by prescription drugs he had taken.

Moreover, Murray did in fact assert this defense, and the State did not argue that the defense was precluded by Jury Instruction 11. In his closing argument, Murray's counsel argued to the jury: "[T]his whole trial is about one thing. Can the State of Nevada prove beyond a reasonable doubt that Steven Murray on July 7th was driving impaired?" Defense Closing Argument, Exh. 33, p. 232 (ECF No. 15-4, p. 12). Murray's counsel specifically pointed out Jury Instruction 7, arguing: "Instruction 7 deals with impairment." Id. at 265 (ECF No. 15-4, p. 45). And, Murray's counsel repeatedly argued that Murray had taken the prescription medications for more than a decade, and therefore had a tolerance to them. Id. at 246 (ECF No. 15-4, p. 26) ("Now, his surgery was in 1996, and he said he's been on his medication since '96. Talk about tolerance, and he's an electrician going to work."), 262 (ECF No. 15-4, p. 42) ("He's been taking these pain meds since – for a long time. Not impairment. There's a difference again between being impaired and not being capable of driving safely and having it in your body."), 265 (ECF No. 15-4, p. 45) ("You factor in tolerance, which Kelly – they all agreed tolerance, the idea that you can take something over a prolonged period of time and develop tolerance is a well-established theory. It's not controverted.").

The record establishes that the jury was not misled by Jury Instruction 11 to believe that they could not consider any tolerance Murray developed by taking prescription medications over a long period of time. There is, therefore, no showing that Jury Instruction 11 was improper or that it violated Murray's rights under either state or federal law. Neither Ground 2C nor Ground 8 states a substantial claim. Murray does not make the showing required under Martinez to overcome the procedural default of the claim in Ground 2C. And, he makes no colorable showing of cause and prejudice to overcome the procedural default of the claim in Ground 8. Both will be denied as procedurally defaulted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

H.    Ground 2D

In Ground 2D, Murray claims that his federal constitutional rights were violated because his trial counsel was ineffective for engaging in repeated unprofessional behavior. Amended Petition for a Writ of Habeas Corpus (ECF No. 60), pp. 16–18.

Murray asserted this claim in his first state habeas action, the state district court denied the claim, and the Nevada Supreme Court affirmed, ruling as follows:

> ... [A]ppellant claimed that defense counsel Mr. Steve Immerman engaged in unprofessional "antics" throughout the trial.... Appellant failed to demonstrate that he was prejudiced. While Mr. Immerman engaged in several verbal tussles with the State, the examples provided by appellant occurred during bench conferences or during times when the jury was not in the courtroom…. Given the substantial evidence presented, appellant failed to demonstrate that more circumspect behavior by counsel … would have had a reasonable probability of altering the outcome at trial.

Order of Affirmance, Exh. 62, p. 9 (ECF No. 19-2, p. 10).

Murray points to several instances of alleged unprofessional behavior on the part of his trial counsel. See Amended Petition for a Writ of Habeas Corpus (ECF No. 60), pp. 16–18. This Court has reviewed the record of the trial and observes, as the Nevada Supreme Court did, that most of the conduct of counsel pointed out by Murray occurred outside the presence of the jury. The Court also observes that the trial judge generally acted quickly and decisively to control conflicts between Murray's trial counsel and the prosecutor. While this Court does not countenance the behavior of counsel described by Murray, the Court affords the Nevada Supreme Court's ruling the deference mandated by 28 U.S.C. §2254(d) and finds reasonable the conclusion that Murray does not show that he was prejudiced. See Harrington, 562 U.S. at 101, 103, 111–12. The Court will deny Murray habeas corpus relief on Ground 2D.

I.    Grounds 2E and 5

In Ground 2E, Murray claims that his federal constitutional rights were violated because his trial counsel were ineffective for failing to object to the verdict form. Amended Petition for a Writ of Habeas Corpus (ECF No. 60), pp. 19–20. In Ground 5, Murray claims

that his federal constitutional rights were violated because the "verdict form didn't correctly state the relevant offense." Id. at 23.

The verdict form, as completed by the jury foreperson, was as follows:

Verdict

We, the jury, in the above entitled case, find the Defendant, Steven Murray, as follows:

Count 1 - DRIVING UNDER AND/OR BEING IN ACTUAL PHYSICAL CONTROL WHILE UNDER THE INFLUENCE OF A CONTROLLED SUBSTANCE CAUSING DEATH (PATRICIA HOFF)

(*Please check only one box*)

_X_ Guilty of Driving And/Or Being In Actual Physical Control Causing the Death of Patricia Hoff

___ Guilty of Vehicular Manslaughter

___ Not Guilty

Count 2 - DRIVING AND/OR BEING IN ACTUAL PHYSICAL CONTROL WHILE UNDER THE INFLUENCE OF A CONTROLLED SUBSTANCE CAUSING SUBSTANTIAL BODILY HARM (PORSCHE HUGHES)

(*Please check only one box*)

_X_ Guilty of Driving And/Or Being In Actual Physical Control Causing Bodily Harm to Porsche Hughes

___ Guilty of Reckless Driving Causing Substantial Bodily Harm to Porsche Hughes

___ Not Guilty

Verdict, Exh. 35 (ECF No. 16-1). Murray argues that the verdict form was misleading because, while the phrase "while under the influence of a controlled substance" was included in the heading for each count, that phrase was left out of the language below, next to the box checked by the jury foreperson. See Amended Petition for a Writ of Habeas Corpus (ECF No. 60), pp. 19–20, 23.

Murray argued on his direct appeal that the verdict form was improper. See Appellant's Opening Brief, Exh. 41, pp. 20–22. The Nevada Supreme Court, ruled, without

analysis, that the argument "lack[ed] merit." See Order of Affirmance, Exh. 47, p. 7 n.6 (ECF No. 17-4, p. 8 n.6).

In his first state habeas action, Murray asserted the claim that his trial counsel were ineffective for not objecting to the verdict form. On the appeal in that action, the Nevada Supreme Court affirmed the lower court's denial of the claim, ruling as follows:

> ... [A]ppellant claimed that trial counsel failed to object that he was convicted of driving under the influence charges when he was not found guilty of these charges due to insufficient verdict forms. On direct appeal, this court considered and rejected appellant's argument that his sentences could not stand because "impairment" was not set forth on the verdict forms. As the underlying claim was already considered and rejected, appellant failed to demonstrate that he was prejudiced.

Order of Affirmance, Exh. 62, pp. 9–10 (ECF No. 19-2, pp. 10–11) (citation to Nevada Supreme Court's order on direct appeal omitted).

In this Court's view, the verdict forms were understandable because the headings of the counts made clear what charges were to be considered, and because the jury instructions properly instructed the jury that they had to find impairment to find Murray guilty of the DUI offenses. See Jury Instruction 7, Exh. 36 (ECF No. 16-2, p. 9). Furthermore, both Murray's trial counsel and the prosecutor explained to the jury, in their closing arguments, what facts the jury had to find in order to find Murray guilty of the DUI offenses. See Transcript of Trial, March 27, 2009, Exh. 33, pp. 220–23 (ECF No. 15-3, p. 61 – ECF No. 15-4, p. 3) (prosecutor); id. at 232–33 (ECF No. 15-4, pp. 12–13) (Murray's trial counsel) ("[T]his whole trial is about one thing. Can the State of Nevada prove beyond a reasonable doubt that Steven Murray on July 7th was driving impaired?").

The Nevada Supreme Court's rulings, that the verdict form was proper, and that Murray's trial counsel were not ineffective for not objecting to it, were reasonable. Those rulings were not contrary to, or an unreasonable application of, Strickland, or any other Supreme Court precedent. The Court will deny Murray habeas corpus relief on Grounds 2E and 5.

/ / /

/ / /

J.      Ground 4

The Court dismissed Ground 4 in the order entered on September 6, 2019 (ECF

No. 72). The Court, therefore, denies habeas corpus relief on that claim.

K.      Ground 6

In Ground 6, Murray claims that his federal constitutional rights were violated

because the "State elicited evidence of Mr. Murray's pre-arrest silence." Amended Petition

for a Writ of Habeas Corpus (ECF No. 60), p. 24. His claim is as follows:

> At trial, the lead detective testified—over defense counsel's objection—that after the crash, Mr. Murray didn't express any concern for anything (for example, for the victims), except for the tools in his truck. [See, e.g., Trial Transcript, March 26, 2009, Exh. 32, p. 113 (ECF No. 14-7, p. 9)]. This testimony was an unconstitutional commentary on Mr. Murray's pre-arrest silence. Meanwhile, the error had a substantial and injurious effect on the verdict, because it made Mr. Murray seem callous and uncaring. Mr. Murray is therefore entitled to relief.

Id.

In their motion to dismiss, Respondents argued that the claim in Ground 6 is barred

by the statute of limitations. See Motion to Dismiss (ECF No. 64), pp. 15–16. In response,

Murray argued that the claim was not time-barred because it relates back to his timely

pro se original petition (ECF No. 6). See Response to Motion to Dismiss (ECF No. 67),

pp. 13–14. Murray argued that he raised the claim in Ground 6 in his original pro se

petition by attaching a copy of the Nevada Supreme Court's order on his direct appeal,

and asserting, as follows, all the claims made on his direct appeal:

> Defendant is submitting appellate counsels direct appeal, for this courts review and ruling on the issues [appellate] counsel raised in direct appeal to the Nevada Supreme Court.
>
> Defendants conviction and sentence are invalid under the federal constitutional guarantees of due process, and equal protection, due to the failure of the Nevada Supreme Court to conduct a "full and fair" adequate review of Defendants claims resulted in a violation of his 5th, 6th and 14th Amendments of the U.S. Const. 28 U.S.C.A. § 2254(d)(1)(2).

Petition for a Writ of Habeas Corpus (ECF No. 6), p. 5A (ECF No. 6, p. 35). In their reply

in support of the motion to dismiss, Respondents appeared to concede that if Ground 6

1  relates back to Murray's pro se original petition it is not barred by the statute of limitations.

2  See Reply (ECF No. 70), pp. 6–8.

3         Murray's argument in opposition to the statute of limitations is that Ground 6 relates

4  back to the filing of his pro se original petition under Federal Rule of Civil Procedure 15(c)

5  and Mayle v. Felix, 545 U.S. 644 (2005). He argued that the facts underlying the claim

6  are found in the order of the Nevada Supreme Court on his direct appeal, which was

7  attached to his original petition and incorporated into it. He relied, in his opposition to the

8  motion to dismiss, on Ross v. Williams, 896 F.3d 958 (9th Cir. 2018), in which the Court

9  of Appeals held that a habeas petition may under certain circumstances incorporate by

10  reference claims described in materials attached to the petition. See Ross, 896 F.3d at

11  966. In the September 6, 2019 order (ECF No. 72), this Court deferred ruling on

12  Respondents' statute of limitations defense, noting that the Court of Appeals had

13  withdrawn the decision in Ross pending rehearing en banc. See Ross v. Williams, 920

14  F.3d 1222 (9th Cir. 2019).

15         Respondents reasserted the statute of limitations as a defense to Ground 6 in their

16  answer. See Answer (ECF No. 76), pp. 7–8.

17         The Court of Appeals ruled en banc in the Ross case on February 24, 2020. See

18  Ross v. Williams, 950 F.3d 1160 (9th Cir. 2020). The en banc court ruled that if a petitioner

19  identifies claims in an original petition and attaches a court decision providing the facts

20  supporting those claims, the petition, including the attachment, can support the relation

21  back of an amended petition to defeat a statute of limitations defense. See Ross, 950

22  F.3d at 1167. The court stated the rule as follows: "If a petitioner attempts to set out

23  habeas claims by identifying specific grounds for relief in an original petition and attaching

24  a court decision that provides greater detail about the facts supporting those claims, that

25  petition can support an amended petition's relation back." Id.

26         In his pro se original petition, Murray identified claims he intended to assert by

27  stating that he was "submitting appellate counsel['s] direct appeal, for this court['s] review

28  and ruling on the issues [appellate] counsel raised in direct appeal to the Nevada

Supreme Court." See Petition for a Writ of Habeas Corpus (ECF No. 6), p. 5A (ECF No. 6, p. 35). The order of the Nevada Supreme Court attached to his petition included adequate facts regarding the claim in Ground 6 such that the claim, as set forth in his amended petition, relates back to the filing of the timely original petition. Following the Court of Appeals' en banc ruling in Ross, then, this Court determines that Ground 6 is not barred by the statute of limitations.

However, turning to the merits of Ground 6, the Court determines that the Nevada Supreme Court's denial of relief on the claim was reasonable. The Nevada Supreme Court's ruling was as follows:

Murray's lack of concern for the victims

Murray argues that the district court abused its discretion in admitting evidence that he did not express concern for the victims he injured in the collision for two reasons. First, Murray contends that the evidence was irrelevant and unduly prejudicial. Second, Murray contends that admission of the testimony violated his federal and state constitutional rights against self-incrimination. We disagree with both arguments.

Standard of review

We review "a district court's decision to admit or exclude evidence ... [for] an abuse of discretion." Petty v. State, 116 Nev. 321, 325, 997 P.2d 800, 802 (2000). "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." Jackson v. State, 117 Nev. 116, 1210, 17 P.3d 998, 1000 (2001).

Relevance and undue prejudice

NRS 48.025 provides that relevant evidence, defined in NRS 48.015 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence," is generally admissible. However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." NRS 48.035.

Here, Murray elicited evidence from Detective William Redfairn that he had shown concern "about what was going to happen to his tools" following the accident. It was only after this evidence had been introduced that the State asked Detective Redfairn whether Murray had expressed concern for anything else. Detective Redfairn responded "[n]o."

In this context, we conclude that the State's questioning was proper to rebut an inference that, because Murray was concerned about what would happen to his tools, he was thinking clearly and was not intoxicated at the time of the accident. Moreover, the State's question did not directly address Murray's lack of concern for the victims, but only generally

referenced his lack of concern for anything other than his tools. Accordingly, we conclude that the district court did not abuse its discretion in admitting the evidence.

Constitutional right to silence

Nevada caselaw has not addressed the question of whether a defendant's right against self-incrimination extends to pre-arrest silence, and federal law is split on the subject. See U.S. v. Muhammad, 502 F.3d 646, 657 n.7 (7th Cir. 2007) (noting that federal appellate courts are split "as to whether the prosecution may [properly admit] evidence of a defendant's pre-arrest silence as substantive evidence of guilt").

[Footnote: We note that Murray's statements occurred prior to his arrest and the subsequent reading of his Miranda rights.]

However, we do not need to decide that question here because we do not believe that Murray's failure to show concern for the victims can be characterized as an attempt to invoke his right to silence. See, e.g., Coppola v. Powell, 878 F.2d 1562, 1565 (1st Cir. 1989) (noting that the court will examine the "'entire context in which the claimant [of the privilege against self-incrimination] spoke'" to determine whether the claimant's actions can reasonably be understood as an attempt to claim the privilege (quoting United States v. Goodwin, 470 F.2d 893, 902 (5th Cir. 1972))). To the contrary, Murray expressed concern for his tools and spoke with law enforcement officers regarding other aspects of the accident. At no point did he indicate, either verbally or through silence, that he intended to invoke his right to silence. Accordingly, Detective Redfairn's testimony cannot be construed as unfair commentary on the invocation of that right, and we see no constitutional violation.

Order of Affirmance, Exh. 47, pp. 1-4 (ECF No. 17-4, pp. 2–5); see Transcript of Trial, March 26, 2009, Exh. 32, pp. 106–13 (ECF No. 14-7, pp. 2–9).

Murray does not point to any United States Supreme Court precedent precluding the testimony to the effect that after the collision Murray only expressed concern about his tools. Murray has not shown the Nevada Supreme Court's ruling to be contrary to, or an unreasonable application of, any Supreme Court precedent. The Court, therefore, denies Murray habeas corpus relief on Ground 6.

L.     Ground 7

In Ground 7, Murray claims that his federal constitutional rights were violated because the "jury was tainted with misconduct." Amended Petition for a Writ of Habeas Corpus (ECF No. 60), pp. 24–26.

As with Ground 6, in his pro se original petition, Murray identified this as a claim he intended to assert (see Petition for a Writ of Habeas Corpus (ECF No. 6), p. 5A (ECF No. 6, p. 35)), and the order of the Nevada Supreme Court attached to his petition included adequate facts regarding the claim such that the claim, as set forth in his amended petition, relates back to the filing of the timely original petition. See Ross, 950 F.3d at 1167; see also Discussion of Ground 6, supra. Therefore, Ground 7 is not barred by the statute of limitations.

However, the Court finds that the Nevada Supreme Court's denial of relief on the claim in Ground 7, on Murray's direct appeal, was reasonable. The Nevada Supreme Court's ruling was as follows:

> Murray also argues that the district court abused its discretion in refusing to grant a mistrial based on juror misconduct. Specifically, one juror indicated that he thought the attorneys were "hiding things from" the jury, and another juror allegedly referred to one of Murray's supporters in a disparaging tone. In light of the district court's extensive canvassing of the jury following the jurors' comments, and the jurors' expressed dedication to impartiality, we see no error.

Order of Affirmance, Exh. 47, p. 5 n.4 (ECF No. 17-4, p. 6 n.4).

The Sixth Amendment right to a jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961). And, the constitutional guarantee of due process of law requires that the defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it." Smith v. Phillips, 455 U.S. 209, 217 (1982). On federal habeas review, a state court's findings about a juror's fitness to serve on the jury are entitled to "special deference." Perez v. Marshall, 119 F.3d 1422, 1426 (9th Cir. 1997) (citing Patton v. Yount, 467 U.S. 1025, 1036–38 & n.12 (1984)); see also Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir. 1990) (trial court determinations "on juror impartiality deserve a high measure of deference" (internal quotation marks omitted)).

Here, with respect to each of the instances of alleged juror misconduct or bias, the trial court held extensive hearings, gathered information about the events, heard from the jurors who were potentially affected, determined that the jurors were unbiased and could

remain on the jury, and denied Murray's motion for a mistrial. See Transcript of Trial, March 26, 2009, Exh. 32, pp. 125–92 (ECF No. 14-7, p. 21 – ECF No. 14-8, p. 34); id. at 199–301 (ECF No. 14-8, p. 41 – ECF No. 14-10, p. 51). This Court determines that the Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence. The Court will deny Murray habeas corpus relief on Ground 7.

M.   Certificate of Appealability

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also James v. Giles, 221 F.3d 1074, 1077–79 (9th Cir. 2000). Applying the standard articulated in Slack, the Court finds that a certificate of appealability is unwarranted with respect to the claims on which relief is denied.

N.   Motion for Release

Murray has filed a motion requesting release pending this Court's ruling on the merits of his petition (ECF No. 95). Murray alleges in that motion that there is an outbreak of COVID-19 at the Nevada prison where he is incarcerated, Three Lakes Valley Conservation Camp (TLVCC), and that he has underlying health conditions that render him at heightened risk from COVID-19. See Emergency Motion for Release Pending

Decision Due to Risks of Infection by COVID-19 (ECF No. 95). As Murray's motion seeks release pending a final merits decision by this Court, and as this order includes that decision, the motion as framed by Murray is now moot, and it will be denied on that ground.

The Court will, however, order Murray released from physical custody, immediately, pursuant to Federal Rule of Appellate Procedure 23(c).

In this order, the Court grants Murray relief on two of his claims, Grounds 1 and 3, both of which concern the validity of Murray's conviction of vehicular homicide. Therefore, the habeas relief granted is that Respondents release Murray from custody on the vehicular homicide conviction—that is, put Murray in the position he would be in had he not been convicted of that crime, taking into consideration the time that he has served in prison—or retry Murray on the vehicular homicide charge. That habeas relief—the vacatur of the conviction on vehicular homicide count or its retrial—will be stayed pending appeal. However, in light of the evidence presented at the evidentiary hearing on December 18, 2020, the Court determines that Murray's release under Rule 23(c), immediately, is warranted, and the Court will grant Murray such release.

Rule 23(c) governs a request for release pending review of a decision conditionally granting the writ of habeas corpus. Rule 23(c) directs that "[w]hile a decision ordering the release of a prisoner is under review, the prisoner must—unless the court rendering the decision ... orders otherwise—be released on personal recognizance, with or without surety." The rule creates a presumption for release in cases where a district court grants relief to a habeas petitioner, which is subject to rebuttal. See Hilton v. Braunskill, 481 U.S. at 774, 777. In determining whether Respondents have overcome the presumption created by Rule 23(c), the Court considers the following: (1) whether Respondents have made a strong showing that they are likely to succeed on the merits, (2) whether Respondents will be irreparably injured by the petitioner's release pending appeal, (3) whether a denial of such release will substantially injure the petitioner, and (4) the public interest. Id. at 776. These factors only "guide courts when they must decide whether to

release a habeas petitioner pending the State's appeal." Id. The "factors contemplate individualized judgments in each case, [and] the formula cannot be reduced to a rigid set of rules." Id. at 777.  Rule 23(c) accords the court making the custody determination considerable latitude. See id.

Regarding the first factor, Respondents have not established a strong likelihood of success on appeal. In short, the record is void of evidence that Murray was advised about the effect of the stipulation on his right to a jury trial, or that he understood the stipulation to be a waiver of his constitutional right to a jury trial, and there is compelling evidence that in fact he was not so advised and did not have that understanding. This Court does not see a reasonable argument that Murray's waiver of his right to a jury trial on the vehicular homicide charge was knowing, or that it was reasonable for Murray's appellate counsel to fail to assert a claim such as Ground 1 on his direct appeal.

Regarding the second factor, the Court does not understand Respondents to argue that they would be irreparably injured by Murray's release pending appeal.

Turning to the third factor, whether denial of release pending appeal will substantially injure the petitioner, that factor weighs heavily in favor of Murray's release. The general nature of COVID-19 is now well known, and it is now a matter of common knowledge that, as of the date of this order, the disease is continuing to spread in the community in Nevada with devastating effects, especially in Nevada's prisons. The evidence at the evidentiary hearing established that there have been, and currently are, several cases of COVID-19 at TLVCC, the prison where Murray is incarcerated. Given the evidence at the evidentiary hearing, the Court finds that there is a substantial danger that Murray could contract COVID-19 at TLVCC, and that Murray suffers from conditions pursuant to the Center for Disease Control ("CDC") that elevate his risk of serious illness or death if he contracts COVID-19: Murray is 56 years old, and he suffers from high blood pressure and asthma.

Finally, as for the fourth factor, the public interest, the Court finds that the public interest in keeping Murray in physical custody is less weighty than the danger from

COVID-19 that Murray would face if he remains incarcerated. Murray has served over 11 years in prison. That is more than enough to qualify him for parole on the sentence of 8 to 20 years that remains valid.  According to Murray's counsel, by virtue of credits earned by Murray, he is close to completing his entire 8- to 20-year prison sentence. The Court also notes that Murray was granted parole on the sentence on the now-invalid vehicular homicide conviction; this is some indication that parole would likely be in order for Murray on the 8- to 20-year DUI sentence as well. The Court determines that, while there may be some public interest in keeping Murray in prison pending any appeal in this case, no such interest has been articulated by the Respondents, and any such interest does not outweigh the danger Murray would face from COVID-19 if he remains in prison.

Therefore, considering the applicable factors, in combination with the entire record, and the evidence presented at the evidentiary hearing, the Court finds that the balance of the equities tilts substantially in favor of upholding the presumption for release under Rule 23(c), and granting Murray release from physical custody immediately. The Court will therefore order Murray released from physical custody, immediately, pursuant to Rule 23(c), subject to the conditions of release set forth below.

In structuring the habeas corpus relief and Murray's release from physical custody pursuant to Rule 23(c) in this manner, the Court's intention is as follows: if there is an appeal, Murray is to remain out of physical custody pending the completion of the appeal, unless otherwise ordered by this Court or the Court of Appeals; if there is no appeal and Respondents elect to retry Murray on the vehicular homicide charge, Murray is to remain out of physical custody until the completion of the retrial and entry of a new or amended judgment of conviction, unless otherwise ordered by this Court; if there is no appeal and Respondents elect not to retry Murray on the vehicular homicide charge, Murray is to remain out of physical custody until the habeas relief goes into effect and Murray is released from all custody on the vehicular homicide conviction.

/ / /

/ / /

IV.    Conclusion

**IT IS THEREFORE ORDERED** that the Amended Petition for Writ of Habeas Corpus (ECF No. 60) is **GRANTED IN PART AND DENIED IN PART**. Petitioner is granted relief on Grounds 1 and 3 of the Amended Petition; he is denied relief on all other claims.

**IT IS FURTHER ORDERED** that the Petitioner's, Steven Nelson Murray's, conviction of vehicular homicide shall be vacated within 60 days, unless the Respondents file in this action, within that 60-day period, a written notice of election to retry Murray, and the State thereafter, within 180 days after the filing of that notice, commences jury selection in the retrial. Either party may request from this Court reasonable modification of the time limits set forth in this paragraph. This aspect of the grant of habeas corpus relief will be stayed pending the conclusion of any appellate or certiorari review in the Ninth Circuit Court of Appeals or the United States Supreme Court, or the expiration of the time for seeking such appellate or certiorari review, whichever occurs later.

**IT IS FURTHER ORDERED** that Petitioner is denied a certificate of appealability with respect to the claims on which relief is denied.

**IT IS FURTHER ORDERED** that Petitioner's Emergency Motion for Release Pending Decision Due to Risks of Infection by COVID-19 (ECF No. 95) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Appellate Procedure 23(c), Petitioner shall be released by Respondents from physical custody, no later than **5:00 p.m.** on **December 25, 2020**, under supervision by the United States Probation Office for the District of Nevada (U.S. Probation), upon the following conditions:

(a)    Petitioner shall report to U.S. Probation in Las Vegas as required by that office;

(b)    Petitioner shall maintain residence in Clark County, Nevada;

(c)    Petitioner shall not drive any motor vehicle;

(d)    Petitioner shall not travel out of the State of Nevada.

(e)     Petitioner shall not use any narcotic drug or other controlled substance, as defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

**IT IS FURTHER ORDERED** that Mr. Murray shall report to the Probation Office on **December 28, 2020** in person after his release to review his conditions of release.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall provide a copy of this order, and the judgment to be entered, to the Clerk of Nevada's Eighth Judicial District Court, Clark County, Nevada, with reference to that court's case number C246302.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment accordingly.

**DATED**: <u>December 24, 2020</u>.

RICHARD F. BOULWARE, II,
UNITED STATES DISTRICT JUDGE